IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-00862-WYD-CBS

UNITED STATES BRASS CORPORATION, now known as ZURN PEX, INC., a Delaware corporation,

    Plaintiff,

v.

DORMONT MANUFACTURING COMPANY, a Pennsylvania corporation,

    Defendant.

**ORDER**

I.    INTRODUCTION

THIS MATTER is before the Court on Defendant's Dormont Manufacturing Company's ["Dormont"] Motion to Dismiss Plaintiff's Amended Complaint and Supporting Brief filed August 11, 2005. The Amended Complaint asserts that United States Brass Corporation ["USB"] is entitled to contractual and common law indemnification from Dormont for the settlement amount, fees and costs incurred by USB while defending a product liability suit.

Dormont contends in its motion to dismiss that the contractual language relied upon by USB is vague and ambiguous and, as a matter of law, does not support a claim for indemnification. Additionally, Dormont asserts that USB's common law indemnity claim is not recognized under Colorado law. This motion was converted to a motion for summary judgment by Order filed November 3, 2005. While the parties were

given notice of this conversion and an opportunity to submit additional materials for the Court to consider in connection with the motion, neither party did so.

## II.     FACTUAL BACKGROUND

USB and Dormont entered into a private labeling agreement ["Agreement"] dated June 5, 2000, whereby Dormont would manufacture stainless steel nut-by-nut gas appliance connectors, stamp USB's name on each, and ship them to USB.  Am. Comp., ¶ 5.  USB would then attach labels, warnings, and packaging, include two fittings, and redistribute them to various retailers.  *Id.*

The Agreement contained a provision stating that Dormont "accepted all obligations associated with being manufacturer of the product."  *Id.*  USB sent purchase orders to Dormont for the connectors from June 1, 2000 through the end of December 2000.  *Id.*, ¶ 6.  Attached to every purchase order was a copy of the Agreement, and the last page of each order stated, "PO subject to conditions stated in attached Agreement dated June 5, 2000."  *Id.*

Claire Long and Allstate Insurance Company ["the underlying plaintiffs"] filed a suit against USB alleging personal injury and property damage due to a defective gas connector that allowed propane to leak causing an explosion at a residence owned by Shakira Ballin ["the underlying suit"].  *Id.*, ¶ 8.  The complaint in that suit alleged that the explosion and resulting fire were fueled by a propane leak in the connector, which propane was ignited when Ms. Long turned on a vacuum cleaner.  *See* Complaint in the underlying suit, ¶ 6, attached as Exhibit 2 to the Amended Complaint.  Ms. Long, who

was house sitting for Ms. Ballin at the time of the explosion, sustained severe injuries, including burns over 50% of her body.  *Id.*, ¶ 7.

It is undisputed that the allegedly defective gas appliance connector at issue in the underlying suit was one of the connectors manufactured by Dormont for USB under the Agreement.  *Id.*, ¶ 11.  Further, USB contends that it is undisputed that the tubing part of the connector which allowed the propane to leak was manufactured by Dormont, and that USB did not alter it before shipping the product.  USB tendered the defense of the underlying suit to Dormont on May 28, 2003.  Am. Compl., ¶ 9.  Dormont rejected USB's tender.  *Id.*

Thereafter, USB settled in good faith with the underlying plaintiffs, settling with Ms. Long for one million dollars and with Allstate for $50,000.  *Id.*, ¶ 10.  USB then filed this suit seeking indemnification from Dormont for the amounts paid in settlement as well as legal fees, costs and expenses incurred in defending the underlying suit.  This Court has original diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332(a).

III.   ANALYSIS

   1.   Standard of Review

As stated previously, Dormont's motion was converted to a motion for summary judgment by Order dated November 3, 2005.  Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

When determining whether summary judgment is proper, I must "'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* (quotation omitted).

2. Whether Dormont's Motion to Dismiss Should Be Granted

A. Whether Dismissal is Proper Because the Indemnification Provision Is Vague and Ambiguous

I first address Dormont's argument that the indemnification provision language is vague and ambiguous as a matter of law, entitling Dormont to dismissal of the contractual indemnification claim. Dormont interprets the indemnification provision stating, "all obligations associated with being the manufacturer of the product," as a statement that does not purport, implicate or expressly permit indemnification. Dormont further contends that under Colorado law, an indemnity contract purporting to hold an indemnitee, such as USB, harmless for its own fault must contain clear and unequivocal language to that effect.

Since this case is before the Court on diversity jurisdiction, state law applies to the controversy. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). The Colorado Supreme Court holds that "[w]hile indemnity contracts are generally construed to effectuate the parties' intentions, under the rule of strict construction, 'indemnity contracts holding indemnitees harmless for their own negligent acts must contain clear and unequivocal language to that effect.'" *Public Serv. Co. of Colorado v.*

-4-

*United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1283 (Colo. 1992) (quoting *Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 426 (Colo. 1988)). "'[A] contractual provision should not be interpreted to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties.'" *Id.* (quoting *United States v. Seckinger*, 397 U.S. 203, 211 (1970)). "Ambiguities will be resolved against the party seeking indemnity." *Williams*, 749 P.2d at 426.

I find that the contractual language does not clearly and unequivocally state that Dormont is to indemnify USB nor does it clearly show the parties' intent that Dormont indemnify USB or hold it harmless for defects in the connector. The phrase that USB relies on, stating that Dormont "accepted all obligations associated with being manufacturer of the product", is broad and ambiguous. It does not contain any reference to indemnity, holding USB harmless, liabilities associated with USB's sale of the product or its negligence, the defense of USB in connection with actions involving the connectors, or any other words showing an intent to indemnify or to extinguish liability on the part of USB.

In *Public Service*, the court held that an agreement that required defendant to "'indemnify and save and hold harmless' Public Service 'from and against all claims and liabilities in any way arising out of the rights granted United Cable" and to "defend any and all such actions, claims or other legal proceedings" clearly showed an intent to indemnify, even though the agreement did not address the effect of negligence on the part of Public Service. *Id.*, 829 P.2d at 1284. While the Colorado Supreme Court

recognized that broad language may be sufficient to meet the rule of strict construction, and that "[t]here is a growing trend to relax the rule of strict construction in construing indemnify contracts in commercial settings", the inquiry the court must still conduct is "'whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed.'" *Id.* (quoting *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 785 (Colo. 1989)).

In *Williams*, a subcontractor filed a third party indemnity claim against a contractor in connection with the collapse of a trench which the subcontractor dug at the express direction of the contractor's supervisor. The Colorado Supreme Court found that the statement before the accident from the supervisor, "Don't worry about it -- we will take care of it if anything happens" combined with a reassurance after the accident that the contractor would take care of any problems was not sufficiently clear to be a contract to indemnify. *Williams*, 749 P.2d at 246-47. Quoting *Batson-Cook Co. v. Industrial Steel Erectors*, 257 F.2d 410, 412 (5th Cir. 1958), the court stated:

> [T]he broad, all-inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary requirement on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit.

*Id. Williams* found that "[t]his reasoning applies with greater force when the statement is not only broad but ambiguous." *Id.* In finding that the district court correctly found no contract of indemnity, *Williams* concluded, "[w]e are mindful that it is inappropriate to construe statements so narrowly as to deprive them of any meaning, yet the burden of

indemnity is so onerous that we hesitate to impose it unless the language used clearly requires such a result." *Id.*

In *Batson-Cook*, which *Williams* cited, the Fifth Circuit held that a contract purporting to indemnify a general contractor against all losses "sustained in connection with or to have arisen out of or resulting from the performance of the work of the subcontractor" was not sufficiently specific and unambiguous to impose liability. *Id.*, 257 F.2d at 413.  Finally, this court found that a clause stating, "I agree to ... indemnify [defendants] ... for any injury or death caused by or resulting from me or my family's participation [in the rafting activity]" did not obligate the plaintiff to indemnify defendants for the attorneys' fees and other expenses incurred in connection with the lawsuit because the language did not clearly and unequivocally state that the signor agreed to pay the fees and costs associated with such a lawsuit.  *Lahey v. Covington*, 964 F. Supp. 1440, 1446 (D. Colo. 1996), *aff'd*, 113 F.3d 1246 (10th Cir. 1997) (table).  The foregoing authority supports Dormont's argument that dismissal is proper as to the contractual indemnification claim on the ground that the clause relied on does not clearly and unequivocally express an intent to indemnify.

USB argues, however, that it is not seeking indemnification for its own negligence, such that the above case law is not applicable.  USB asserts in that regard that while the underlying plaintiffs initially sued under theories including failure to properly warn and a breach of express warranty claim directed at USB, "the Final Pretrial Order in the underlying matter reveals that Plaintiffs abandoned their failure to warn theory and based their entire case on the allegedly-defective tubing that Dormont

-7-

manufactured." Pl.'s Br. in Opp. to Def. Dormont Mfg. Co.'s Mot. to Dismiss Pl.'s Am. Compl. ["Response"], at 2. I disagree.

The Final Pretrial Order in the underlying case, attached as Exhibit 1 to the Response, does not show any abandonment of these theories by the underlying plaintiffs. While the Pretrial Order does refer to defects in the connector tubing manufactured by Dormont, it also specifically states that the underlying plaintiffs are suing USB on claims of breach of express and implied warranty and violation of the Colorado Consumer Protection Act. The Pretrial Order also states that both Dormont and USB "misrepresented and/or concealed Dormont's involvement in the manufacture of the product as subsequently revealed by [USB]." Final Pretrial Order at 4, Ex. 1 to Response. Finally, the Pretrial Order states that USB "supplied fittings for the subject gas connector, packaged the connector in Ace Hardware packaging, supplied the warnings and instructions for the packaging and shipped the connector to an Ace Hardware distribution facility." *Id.* at 11, ¶ 7. Accordingly, I reject this argument and find that USB was sued as a joint tortfeasor by the underlying plaintiffs.

USB also argues that in determining whether the contractual term at issue clearly and unambiguously shows an intent to indemnify, the Uniform Commercial Code adopted by Colorado allows the term to be explained or supplemented by a course of dealing or usage of trade by course of performance. USB cites COLO. REV. STAT. § 4-2-202 (2005). I agree with USB that this is the general rule. See *Great Western Sugar Co. v. Northern Natural Gas Co.*, 661 P.2d 684, 691 (Colo. App. 1982) ("[e]vidence of course of dealing and course of performance is admissible if it does not directly

contradict terms of written agreement, but merely explains or supplements it"), *aff'd*, 698 P.2d 769 (Colo. 1985). However, I find no indication in the cases construing indemnity agreements that this rule would apply to their construction.

*Williams* and the other cases construing indemnity agreements looked to the contractual language itself to see if the language clearly and unequivocally indicated an intent to indemnify, under a strict construction standard. While the intent of the parties is relevant to this determination, it appears to be relevant only insofar as the intent is expressed by the parties in the contract itself. Allowing evidence of course of dealing or usage of trade to assist the court in making this determination would allow parties to evade the rule of law stated in *Williams*, as they could use later performance to show that the parties meant an ambiguous phrase to clearly show an intent to indemnify. I do not think that the Colorado courts would adopt such a standard. *See Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998) (a] federal court sitting in diversity must ascertain and apply the law of the forum state "with the objective that the result obtained in the federal court should be the result that would be reached'" in the state court) (quotation omitted).

However, even if course of performance and usage of trade would be permissible under Colorado law in connection with indemnification contracts, I find that USB has not shown through such evidence that the parties clearly intended Dormont to indemnify USB. USB argues in that regard that during the time of the Agreement, USB returned to Dormont all gas connectors that it received from customers or in-house inspectors that had visible defects. Dormont would then give credits to USB for the

defective connectors. However, the fact that all defective connectors were returned for credit does not clearly and unequivocally show that Dormont agreed to indemnify and hold USB harmless in the event USB was sued for negligence.

USB also asserts that during the negotiations between USB and Dormont as to the Agreement, the president of Dormont stated that he would "stand behind its product". This also does not clearly and unequivocally show an intent to indemnify. *Williams*, 749 P.2d at 426-27. Finally, the fact that USB's representatives understood the president of Dormont's statement to mean that Dormont would indemnify USB in connection with the connectors does not show that Dormont also intended this result. Both parties had to intend this result for indemnification to be applicable.

Based upon the foregoing, I find that Dormont's motion to dismiss should be granted in connection with the claim for contractual indemnification. I find that the indemnification clause is vague and ambiguous and does not clearly and unequivocally state an intent to indemnify or extinguish liability on the part of USB.

      B.  <u>Whether Dismissal is Proper as to the Common Law Indemnification Claim</u>

Dormont contends that the common law indemnity claim also must be dismissed because Colorado does not recognize that cause of action under the facts of this case. Dormont argues that pursuant to the Uniform Contribution Among Tortfeasors Act ["UCATA"], Colo. Rev. Stat. § 13-50.5-101, *et seq.*, each defendant is responsible only for its portion of damages as caused by its own fault unless there is an express and clear agreement between the parties to the contrary. Dormont further argues that the

doctrine of indemnity between joint tortfeasors has been abolished in light of the UCATA except in the case of certain special relationships that do not exist in this case.

Turning to my analysis, after enactment of the UCATA, the Colorado Supreme Court addressed the viability of the doctrine of indemnification between joint tortfeasors in *Brochner v. Western Ins. Co.*, 724 P.2d 1293 (Colo. 1986). It first found that the UCATA did not intend to alter the common law of indemnity, citing § 13-50.5-102(6). *Id.* at 1298. However, it found that the adoption of contribution "invites, if it does not require, reconsideration of the doctrine of indemnity between joint tortfeasors." *Id.*

*Brochner* then analyzed the doctrines of contribution and indemnity, finding that "[i]n view of these legislative enactments, a tortfeasor no longer may unfairly be forced to pay all or a disproportionate share of damages suffered by an injured party as the result of negligent conduct by two or more jointfeasors." *Id.* at 1299. "The principle of proportionate fault adopted by the General Assembly represents a rational and equitable approach to the problem of allocating ultimate responsibility between or among joint tortfeasors . . . ." *Id.* "For these reasons, the doctrine of indemnity insofar as it requires one of two joint tortfeasors to reimburse the other for the entire amount paid by the other as damages to a party injured as the result of the negligence of both joint tortfeasors, is not longer viable, and is hereby abolished." *Id.* The sole remedy available to a joint tortfeasor from another joint tortfeasor is contribution. *Id.*[1]

---

[1] USB relies on *Goode v. A.B. Chance Co.*, 565 P.2d 217 (Colo. App. 1977), which held that "'policy considerations underlying strict liability in tort justify the relief of indemnity against persons in the distributive chain who have placed a product in the stream of commerce with the knowledge of its intended use'" *Id.* at 227 (quotation omitted). *Goode* further noted, "[i]t is not unusual for liability to move transactionally up the chain of distribution until the manufacturer ultimately pays for its breach . . . to the distributor to whom it initially sold the goods.'" I agree with Dormont that this rule of law appears to have

Colorado courts have fashioned certain exceptions to the above rule. In *Johnson Realty v. Bender*, 39 P.3d 1215, 1218 (Colo. App. 2001), the court found that "a common law duty to indemnify may arise based on a pre-existing legal relationship." In that case, the court found that an agent was entitled to indemnification from a principal for losses incurred in performance of the agency. *Id.* An action for indemnity is also proper where the defendant is alleged to be liable based on a theory of respondeat superior, rather than negligence. *Serna v. Kingston Enterprises*, 72 P.3d 376, 380 (Colo. App. 2002).

In the case at hand, however, I find that none of the exceptions apply. USB has alleged no special relationship between itself and Dormont such as a principal-agency type relationship. Further, USB is not suing Dormont under a respondeat superior type theory. Accordingly, I find that USB's common law indemnity claim against Dormont is not proper and that this claim must also be dismissed.

USB argues, however, that the UCATA is not applicable because it is not a joint tortfeasor. I disagree. The court in the underlying case found that USB was deemed to be a manufacturer (through the apparent manufacturer doctrine) of the connector for purposes of COLO. REV. STAT. § 13-21-401. *See* Exhibit A to Def.'s Mot. to Dismiss. Further and more importantly, the underlying plaintiffs sued USB as a joint tortfeasor with Dormont, and stated claims against USB that were not related to the manufacture of the defective tubing by Dormont; namely, breach of express and implied warranty

---

been superseded by enactment of the UCATA and the Colorado Supreme Court's decision in *Brochner*.

and violation of the Colorado Consumer Protection Act.  While USB argues that the underlying plaintiffs abandoned these theories against USB, I find no support for that in the Final Pretrial Order in the underlying case, as discussed in the previous section.

IV.     CONCLUSION

Based on the foregoing, I find that summary judgment should be granted as to both of USB's indemnification claims.  Accordingly, it is

ORDERED that Dormont's Motion to Dismiss filed August 11, 2005, which was converted to a Motion for Summary Judgment by Order dated November 3, 2005, is **GRANTED**.  In accordance therewith, the Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff.  It is

FURTHER ORDERED that the trial set to commence July 9, 2007, and the final trial preparation conference set June 29, 2007, are **VACATED**.

Dated:  March 31, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge